IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILLIP MCFADDEN AND JOHN DEFRANZA, *individually and on behalf of all others similarly situated,* | |
| Plaintiffs, | |
| v. | Case No. 1:23-cv-06151 |
| FENIX INTERNET and FENIX INTERNATIONAL LIMITED, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS UNDER *FORUM NON CONVENIENS* OR, IN THE ALTERNATIVE, <u>UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)</u>**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

    A.    OnlyFans, FIL, and Fenix Internet..................................................... 3

    B.    OnlyFans's Terms of Service and Mandatory Forum-Selection Clause. .............. 4

    C.    Summary of Plaintiffs' Allegations. ...................................................... 5

ARGUMENT ............................................................................................................. 8

    A.    Plaintiffs' Complaint Must be Dismissed Under *Forum Non Conveniens*............ 8

        1.    The Mandatory Forum Clause is Enforceable Under English Law and Requires Dismissal of Plaintiffs' Claims. ............................................. 8

        2.    Federal Common Law Also Requires Dismissal. .................................. 10

    B.    Neither Defendant is Subject to Personal Jurisdiction in Illinois. ...................... 11

        1.    Neither Defendant is Subject to General Jurisdiction in Illinois. ............ 11

        2.    Neither Defendant is Subject to Specific Jurisdiction in Illinois............. 12

    C.    Plaintiffs' Claims Are Barred by CDA 230 and the First Amendment. .............. 15

        1.    CDA 230 Mandates Dismissal of Plaintiffs' Claims. ............................. 15

        2.    The First Amendment Bars Plaintiffs' Claims........................................ 17

    D.    Plaintiffs Also Fail to State a Claim. ..................................................... 18

        1.    All of Plaintiffs' Claims Against Fenix Internet Fail. (Counts II–VIII).

        2.    Plaintiffs' Contract and Unjust Enrichment Claims Fail (Counts I–II)............................................................................................... 19

        3.    Plaintiffs' Fraud-Based Claims Fail to Meet the Heightened Pleading Requirements Under FRCP 9(b) (Counts III—VIII). ............... 22

            a.    Plaintiffs fail to allege a false or deceptive statement or practice. ....................................................................... 23

                (i)    Defendants' alleged "false statements" cannot support Plaintiffs' fraud-based claims. ..................... 23

                (ii)    Defendants' alleged omissions cannot support Plaintiffs' fraud-based claims. ..................................... 26

            b.    Plaintiffs fail to allege they read any false or deceptive statement, much less reasonably relied on such statement. ........ 27

            c.    Plaintiffs' fraud-based claims fail because they merely repeat the breach of contract claim. ............................................. 28

        4.    Plaintiffs Fail to State a Claim Under ICFA (Count IV). ....................... 29

CONCLUSION........................................................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*,
250 F.3d 510 (7th Cir. 2001) ...................................................................................8

*Abbott Lab'ys v. Takeda Pharm. Co.*,
476 F.3d 421 (7th Cir. 2007) ...................................................................................8

*Advanced Tactical Ordnance Sys. LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) .................................................................................14

*Amerigas Propane, L.P. v. BP Am., Inc.*,
691 F. Supp. 2d 844 (N.D. Ill. 2010) ....................................................................27

*Arcand v. Brother Int'l Corp.*,
673 F. Supp. 2d 282 (D.N.J. 2009) ........................................................................27

*Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*,
493 F.3d 841 (7th Cir. 2007) .................................................................................22

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
134 S. Ct. 568 (2013) .............................................................................................10

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) .................................................................................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................18

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) .................................................................................23

*United States ex rel. Bogina v. Medline Indus., Inc.*,
809 F.3d 365 (7th Cir. 2016) .................................................................................26

*Bonny v. Soc'y of Lloyd's*,
3 F.3d 156 (7th Cir. 1993) .....................................................................................10

*Borsellino v. Goldman Sachs Group, Inc.*,
477 F.3d 502 (7th Cir. 2007) ...........................................................................19, 23

*Bristol-Meyers Squibb Co. v. Super. Ct. of Cal.*,
582 U.S. 255 (2017)................................................................................................14

*Brook v. McCormley*,
873 F.3d 549 (7th Cir. 2017) .................................................................................11

iii

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Burger King v. Rudewicz*,
    471 U.S. 462 (1985).................................................................................................14

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ..............................................................................23

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991).................................................................................................10

*Castaneda v. Amazon.com, Inc.*,
    2023 WL 4181275 (N.D. Ill. June 26, 2023) ..........................................................25

*Chicago Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.*,
    519 F.3d 666 (7th Cir. 2008) ................................................................................17

*Coda v. Constellation Energy Power Choice, LLC*,
    409 F. Supp. 3d 296 (D.N.J. 2019) ..................................................................23, 29

*Cohen v. Am. Sec. Ins. Co.*,
    735 F.3d 601 (7th Cir. 2013) ................................................................................30

*Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*,
    250 F.3d 570 (7th Cir. 2001) ................................................................................27

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).................................................................................................11

*Data, Inc. v. Barrett*,
    2011 WL 5903508 (N.D. Ill. Nov, 22, 2011) ........................................................28

*Day v. TikTok, Inc.*,
    2022 WL 595745 (N.D. Ill. Feb. 28, 2022) ...............................................15, 16, 17

*Doe v. Franco Prods.*,
    2000 WL 816779 (N.D. Ill. June 22, 2000) ..............................................15, 16, 17

*Doe v. GTE Corp.*,
    347 F.3d 655 (7th Cir. 2003) ................................................................................15

*Don't Look Media LLC v. Fly Victor Ltd.*,
    999 F.3d 1284 (11th Cir. 2021) ............................................................................10

*E.E.O.C. v. Concentra Health Servs., Inc.*,
    496 F.3d 773 (7th Cir. 2007) ................................................................................18

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ........................................................................16, 17

iv

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Fleury v. Gen. Motors LLC*,
    654 F. Supp. 3d 724 (N.D. Ill. 2023) ...................................................24, 26, 27, 30

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) .........................................................................15

*Greenberger v. GEICO Gen. Ins. Co.*,
    631 F.3d 392 (7th Cir. 2011) ....................................................................28, 29

*Gullen v. Facebook.com, Inc.*,
    2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ................................................14

*Gutierrez v. Wemagine AI LLP*,
    2022 WL 252704 (N.D. Ill. Jan. 26, 2022) ................................................13

*Harnish v. Widener Univ. Sch. of L.*,
    931 F. Supp. 2d 641 (D.N.J. 2013) ...........................................................23, 27, 29

*Hous. Auth. of City of Bayonne v. Hanna*,
    2011 WL 5828521 (N.J. Super. Ct. App. Div. Nov. 21, 2011) ...........................23

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*,
    515 U.S. 557 (1995).........................................................................................18

*Incipio, LLC v. Under Armour, Inc.*,
    2021 WL 3618277 (N.D. Ill. Aug. 16, 2021) ........................................13

*Intimateco LLC v. Apparel Distribution, Inc.*,
    2023 WL 7986336 (D.N.J. Nov. 17, 2023) ...............................................29

*Jackson v. Payday Fin., LLC*,
    764 F.3d 765 (7th Cir. 2014) ....................................................................8

*Johnson v. Pushpin Holdings, LLC*,
    821 F.3d 871 (7th Cir. 2016) ....................................................................10

*Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*,
    783 F.3d 695 (7th Cir. 2015) ....................................................................11

*LaSalle Bank Nat'l Assoc v. Paramont Properties*,
    588 F. Supp. 2d 840 (N.D. Ill. 2008) ...........................................................20, 22

*Leszanczuk v. Carrington Mortg. Servs., LLC*,
    21 F.4th 933 (7th Cir. 2021) ...................................................................30

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*,
   938 F.3d 874 (7th Cir. 2019) ...........................................................................11

*Lieberson v. Johnson & Johnson Consumer Cos.*,
   865 F. Supp. 2d 529 (D.N.J. 2011) .................................................................23

*M.W. Widoff, P.C. v. Encompass Ins. Co. of Am.*,
   2012 WL 769727 (N.D. Ill. Mar. 2, 2012) ......................................................29

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ...............................................................................................9

*Matlin v. Spin Master Corp.*,
   921 F.3d 701 (7th Cir. 2019) ...........................................................................14

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974) .........................................................................................18

*Mueller v. Apple Leisure Corp.*,
   880 F.3d 890 (7th Cir. 2018) ...........................................................................10

*Muniz v. Fenix Int'l Ltd.*,
   2021 WL 3417581 (N.D. Ga. June 28, 2021) ...................................................9

*N. Grain Mktg., LLC v. Greving*,
   743 F.3d 487 (7th Cir. 2014) .....................................................................12, 14

*NC Cap., LLC v. Metabolomic Techs., Inc.*,
   594 F. Supp. 3d 1073 (C.D. Ill. 2022) ..............................................................8

*Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*,
   295 Ill. App. 3d 567 (1st Dist. 1998) ..............................................................28

*Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*,
   67 F.4th 243 (5th Cir. 2023) ............................................................................10

*Noble v. Samsung Elecs. Am., Inc.*,
   2018 WL 801590 (D.N.J. Feb. 8, 2018) ..........................................................23

*O'Connor v. Ford Motor Co.*,
   567 F. Supp. 3d 915 (N.D. Ill. 2021) ..............................................................25

*O'Handley v. Padilla*,
   579 F. Supp. 3d 1163 (N.D. Cal. 2022) ..........................................................18

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Penn, LLC v. Freestyle Software Inc.*,
   2023 WL 5994642 (D.N.J. Sept. 15, 2023) ........................................................23

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ...............................................................................25

*Pomerantz v. Int'l Hotel Co., LLC*,
   359 F. Supp. 3d 570 (N.D. Ill. 2019) ...................................................................11

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
   836 F. 3d 770 (7th Cir. 2016) ...............................................................................22

*Reed v. Palmer*,
   906 F.3d 540 (7th Cir. 2018) ..................................................................................4

*Reno v. ACLU*,
   521 U.S. 844 (1997) ..............................................................................................17

*Richards v. Lloyd's of London*,
   135 F.3d 1289 (9th Cir. 1998) ..............................................................................10

*Robinson v. Toyota Motor Credit Corp.*,
   201 Ill.2d 403 (2002) ............................................................................................29

*Rustom v. Rustom*,
   2018 WL 3997880 (N.D. Ill. Aug. 21, 2018) .......................................................23

*Shannon v. First Franklin Fin. Corp.*,
   2009 WL 2867742 (N.D. Ill. Sept. 2, 2009) ................................................. *passim*

*Shaw v. Hyatt Int'l Corp.*,
   461 F.3d 899 (7th Cir. 2006) ................................................................................28

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ................................................................................................8

*In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*,
   521 F. Supp. 3d 729 (N.D. Ill. 2021) ...................................................................20

*Spector v. Mondelēz Int'l, Inc.*,
   178 F. Supp. 3d 657 (N.D. Ill. 2016) ...................................................................22

*Tamburo v. Dworkin*,
   601 F.3d 693 (7th Cir. 2010) ................................................................................14

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*TAS Distrib. Co. v. Cummins Engine Co.*,
   491 F.3d 625 (7th Cir. 2007) ..................................................................20

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial*
   *Proc.*,
   136 F. Supp. 3d 968 (N.D. Ill. 2015) ......................................................12

*Vesely v. Armslist LLC*,
   762 F.3d 661 (7th Cir. 2014) ..................................................................29

*Walden v. Fiore*,
   571 U.S. 277 (2014) ..........................................................................11, 13

**Statutes**

47 U.S.C. § 230 ........................................................................... *passim*

815 Ill. Comp. Stat. Ann. §§ 505 ................................................. *passim*

N.J. Stat. Ann. § 56:8-1...................................................................7

**Other Authorities**

Fed. R. Civ. P..................................................................15, 19, 30
   8(a) ..........................................................................................18
   9(b) ................................................................................. *passim*
   12(b)....................................................................................11, 18

**INTRODUCTION**

Plaintiffs' Complaint relies on the false notion that Defendant Fenix International Limited ("FIL") guarantees every Fan an "authentic relationship" with each Creator they subscribe to on the OnlyFans platform, and that this guarantees a personal response from each Creator to each message from each Fan.[1] Plaintiffs' claims are based on mischaracterizations and a selective and distorted reading of OnlyFans's Terms of Service ("ToS") and should be dismissed on those grounds alone. However, the Court need not reach the inadequately pled allegations at this stage because jurisdictional defects mandate the dismissal of each of Plaintiffs' claims.

Even though Plaintiffs' Complaint turns on the Court's legal interpretation of the ToS, Plaintiffs conveniently disregard the clear forum selection clause ("Forum Clause") contained in the ToS, which requires that Plaintiffs' claims "be brought in the courts of England and Wales." Because the Forum Clause is valid and enforceable, this Court must dismiss the Complaint in its entirety under the doctrine of *forum non conveniens*.

The Forum Clause is also relevant to whether the Court may exercise personal jurisdiction over Defendants. This Court has previously held that the presence of a forum selection clause calling for exclusive jurisdiction in another court is an important consideration against finding personal jurisdiction in Illinois. Neither Defendant has any employees or offices in Illinois and neither specifically targets marketing or other promotional efforts at Illinois residents. Moreover, the claims in this action do not arise out of any alleged forum-related activities. As such, the Complaint must be dismissed for lack of personal jurisdiction.

---

[1] "Creators" are Users who set up their OnlyFans accounts to post Content on OnlyFans to be viewed by other Users and monetized; "Fans" are Users able to view the Creator's Content through subscriptions. Declaration of Lee Taylor ("Taylor Decl."), ¶ 4.

Even if Plaintiffs could overcome these fatal jurisdictional hurdles, their claims still fail. Plaintiffs' claims rely on a non-contractual statement from the OnlyFans website that "OnlyFans is the social platform revolutionizing creator and fan connections" that is "inclusive of artists and content creators from all genres and allows them to monetize their content while developing authentic relationships with their fanbase." Contrary to Plaintiffs' claims, this precatory and nonspecific statement asserts that OnlyFans "*allows*" Creators to monetize their content while developing authentic relationships with their Fans. It offers no specific or enforceable guarantee to Creators or Fans. Yet, Plaintiffs illogically conclude that, unless a Creator is personally managing their account and responding to each and every message from Fans, Defendants have committed "fraud" because they (a) should have assumed fraud anytime usage patterns might suggest that a Creator is not personally managing their account and responding to each and every message from Fans and (b) were somehow required to actively seek out and interfere with the Creator's chosen method of managing their OnlyFans account.

To justify the imposition of such a duty, Plaintiffs misleadingly quote and misread the ToS, which are referenced more than 65 times in the Complaint. Plaintiffs falsely claim (a) that the ToS forbid Creators from hiring third parties to help them manage their accounts and (b) that OnlyFans is legally obligated to enforce the ToS to prevent Creators from working with third parties to help manage their accounts. To the contrary, the ToS *expressly allow* Creators to use third parties to help them manage their accounts[2] and explain to Creators that they are liable for any Content posted to their account if they "have an agent, agency, management company or other third party

---

[2] Like any business, Creators may choose to work with third parties to assist with tasks required to successfully manage and operate their OnlyFans account. These tasks can range from accounting and tax preparation, to fan-facing work like drafting and scheduling posts, recording, editing, producing content, promoting the Creator's account, and reviewing, responding to, and managing requests from Fans.

which assists with the operation of [their] Creator account (or operates it on [their] behalf)." Compl., Ex. A [ECF No. 1-1] ("Ex. A") at 21, § 7.

Moreover, Section 230 of the Communications Decency Act ("CDA 230"), the First Amendment, and the plain language of the ToS preclude claims based on Plaintiffs' assertion that Defendants were required to "monitor" all content on OnlyFans to ensure Creators were personally responding to each and every message. *See* Ex. A at 7, § 9.d. ("We are under no obligation to monitor Content); *see also id*. at 17, § 6.c., and 23, § 9.d. ("We do not have any obligation to monitor any Content and have no direct control over what your Content may comprise."). For each of these reasons, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.      OnlyFans, FIL, and Fenix Internet.

The OnlyFans website ("OnlyFans") is a subscription-based content-sharing and social media website launched in 2016. ¶ 1;[3] Taylor Decl. ¶ 4. As of November 30, 2023, over 4 million Creator accounts and 300 million Fan accounts have been registered on OnlyFans. This includes 2 million Creator accounts and 80 million Fan accounts that were active in the past six months. Taylor Decl. ¶ 4. OnlyFans provides Creators with the ability to share content with their Fans, who can subscribe to and pay for that content. ¶¶ 1–2. OnlyFans is owned and operated by FIL, a company incorporated and registered in England and headquartered in London. Taylor Decl. ¶ 2. Fenix Internet, LLC ("Fenix Internet") is a Delaware limited liability corporation with its principal place of business in Wilmington, Delaware. Taylor Decl. ¶ 6.[4] Fenix Internet does not own nor operate OnlyFans; instead, it is a wholly owned subsidiary that provides payment processing

---

[3] References to "¶" are to ECF No. 1, Class Action Complaint ("Compl.").
[4] The Complaint erroneously alleges that Fenix Internet has its principal place of business in Florida. ¶ 37. It is, in fact, headquartered in Delaware. Taylor Decl. ¶ 6, 10. This factual dispute is immaterial to the Motion, however, because Plaintiffs admit that Fenix Internet is not incorporated or based in Illinois.

services to FIL in the United States. Taylor Decl. ¶ 7–8. Contrary to Plaintiffs' allegations, ¶ 38, Fenix Internet does not maintain a "registered office" in Chicago, Illinois. Taylor Decl. ¶ 10. Neither Defendant is registered to do business in Illinois nor owns any real property or has employees in Illinois. *Id.* Neither Defendant engages in marketing, sales, or other commercial activity specifically targeted at Illinois residents. Taylor Decl. ¶ 11.

### B.     OnlyFans's Terms of Service and Mandatory Forum-Selection Clause.[5]

Every person who creates a Fan account, including both Plaintiffs, first agrees to the ToS, which expressly govern the use of the OnlyFans website and services.[6] ¶ 57; Ex. A at 2. The ToS contain a mandatory choice-of-law provision and an exclusive Forum Clause requiring the application of English law to "any claim that you have arising out of or in connection with your agreement with us or your use of OnlyFans . . . (including . . . non-contractual disputes or claims)" and mandating that any such claim or dispute "must be brought in the courts of England and Wales." Ex. A at 13-14, § 16(a). Further, the ToS expressly authorize any of FIL's "subsidiar[ies]" – as relevant here, Fenix Internet – to enforce the choice-of-law provision and Forum Clause. Ex. A at 13, § 15(e); Taylor Decl. ¶ 24–25. The separate contract that governs all transactions between a Fan and a Creator on OnlyFans also requires claims to "be brought in the courts of England and Wales."[7]

As the ToS explain, FIL is not a party to and does not bear any responsibility "for any Fan/Creator Transactions."[8] Ex. A at 17-18, § 8(a). FIL "facilitate[s]" interactions between Fans

---

[5] Plaintiffs attached the ToS to their Complaint as Exhibit A, thus the Court may properly consider them in ruling on a motion to dismiss. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

[6] As reflected on their face, the ToS include the Terms of Use for all Users, Terms of Use for Fans, Terms of Use for Creators, and Acceptable Use Policy, among other policies. Ex. A at 2 ("Contents").

[7] Standard Contract Between Fan and Creator, available at https://onlyfans.com/contract.

[8] "Fan/Creator Transaction" is defined in the ToS as "any transaction between a Fan and Creator on OnlyFans by which access is granted to the Creator's Content including in any of the following ways: (i) a Subscription; (ii) payments made by a Fan to view a Creator's pay-per-view Content (pay-per-view media

and Creators by "providing the OnlyFans platform and storing Content." *Id*. The ToS also expressly permit Creators to engage third parties to help them operate their accounts. Ex. A at 21, § 7, as selectively quoted at ¶¶ 78, 246.c, 271.c, and 282.c. ("If you have an agent, agency, management company or other third party which assists you with the operation of your Creator account (or operates it on your behalf), this does not affect your personal legal responsibility.").

### C.    Summary of Plaintiffs' Allegations.

After creating his OnlyFans account in May 2021, Plaintiff John P. DeFranza ("DeFranza") paid a monthly subscription of $20 to follow Creator Yanet Garcia ("Garcia") and later paid to view one message from her. ¶¶ 133–39. DeFranza admits that he received responses to multiple messages he sent to Garcia's account. *Id.* However, DeFranza was dissatisfied with these responses and now alleges "on information and belief" that Garcia did not personally write these responses. ¶ 140. Without more, DeFranza concludes, again "upon information and belief," that OnlyFans knew of and failed to take some legally required action to intervene and require that Garcia herself personally read and reply to DeFranza's messages. ¶¶ 140–41.

DeFranza also alleges he paid $4.50 to Creator Gina Valentina ("Valentina") when asking Valentina to "meet in person." ¶¶ 142–43. DeFranza received a response "less than two hours later" that Valentina "only play[ed] on [OnlyFans]" and invited DeFranza to unlock a video for $3. ¶ 144. Without offering any supporting facts, DeFranza alleges that Valentina's account generated "over $200,000 per month," and that because of this, "upon information and belief," OnlyFans knew "Valentina did not send or receive the messages sent to or from DeFranza," and that OnlyFans was somehow legally obliged to intervene to require that Valentina herself should be personally reading and replying to DeFranza's messages. ¶¶ 146–48.

---

and pay-per-view live stream), and (iii) use by the Fan of the fan interaction function on a Creator's account." Ex. A at 3, § 2(f).

Plaintiff Philip McFadden ("McFadden") subscribed to multiple Creators and paid to access specific content, including that of Creators Riley Reid ("Reid") and Kimmy Granger ("Granger"). ¶¶ 158–63. According to the 2021 news article cited in the Complaint and published *before* McFadden subscribed to Reid's Creator page, Reid owned a social media management agency that helped creators manage their OnlyFans accounts. ¶¶ 159, 161 n.61. Based on this publicly available information, McFadden now concludes "upon information and belief" that every message he "sent to and received from Reid and Granger were sent by individuals impersonating them." ¶ 166. For no rational reason McFadden cites "typographical and syntax errors" in the messages as proof that it was not Reid or Granger personally responding to his messages. ¶ 170. McFadden does not allege that Reid or Granger are recognizable by their syntactical or typographical excellence.

Based on these conclusory allegations, Plaintiffs impute class liability to FIL for failing to "honor its user-facing mission of fostering 'authentic relationships'" by "turn[ing] a blind eye to Creators outsourcing Fan interaction to third parties that run the Creator's account and send [direct messages] and [pay-per-view content] to paying Fans[.]" ¶¶ 20, 102. Notwithstanding that OnlyFans's "user-facing mission" is to *allow* Creators to monetize their content by sharing it with their fanbase and not to monitor Creators' content to ensure they are personally responding to each and every Fan, the alleged false and misleading statements in Plaintiffs' Complaint fall into three main categories:

*First*, Plaintiffs falsely claim that the ToS only permit Creators to use their OnlyFans accounts and not third parties. *See, e.g.*, ¶ 78 ("Only individuals can be Creators."); ¶ 188 ("[U]sers, including Creators, cannot share accounts with others."). The ToS plainly contradict Plaintiffs' claim. Ex. A at 21, § 7 (discussing legal responsibility if a Creator has "an agent, agency,

management company or other third party which assists [them] with the operation of [their] Creator account (or operates it on [their] behalf)[.]").

*Second*, Plaintiffs incorrectly allege that FIL's statements guarantee Fans that using the website will result in "authentic relationships" with Creators. *See, e.g.*, ¶ 1 (OnlyFans "allows [artists and content creators] to monetize their content while developing authentic relationships with their fanbase."); ¶ 9 ("Subscribing to a Creator gives you . . . access to be able to communicate with them directly[.]").

*Third*, Plaintiffs erroneously allege that FIL is legally obligated to monitor Creators' interactions with their fanbase to stop Creators from using third parties to assist with the management of their accounts and to respond to Fans' messages because such conduct, according to Plaintiffs, is tantamount to fraud or is otherwise "inauthentic, repetitive, misleading or low quality." *See, e.g.*, ¶ 80; *see also, e.g.*, ¶¶ 79, 83–85. Plaintiffs' assertion that the mere use of a third party by a Creator to assist with the management of their account is tantamount to fraud is nonsensical.

Plaintiffs seek to represent a nationwide class and two state subclasses. On behalf of the nationwide class, Plaintiffs bring claims for breach of contract against FIL (Count I) and in the alternative unjust enrichment against both Defendants (Count II). On behalf of an Illinois subclass, Plaintiffs bring claims against both Defendants for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Counts III and IV) and fraud (Count V). Finally, on behalf of a New Jersey subclass, Plaintiffs bring three claims against both Defendants for violation of the New Jersey Common Fraud Act ("NJCFA") (Count VI), fraud (Count VII), and in the alternative, for negligent misrepresentation (Count VIII).

**ARGUMENT**

**A.      Plaintiffs' Complaint Must be Dismissed Under *Forum Non Conveniens*.**

It is undisputed that, in order to create their accounts, Plaintiffs agreed to the ToS, ¶¶ 57, 76, which, in turn, require them to bring "any claims" arising out of their use of OnlyFans exclusively in "the courts of England and Wales." Ex. A at 13-14, § 16(a). The Court should enforce the forum selection clause and dismiss this case.[9]

**1.      The Mandatory Forum Clause is Enforceable Under English Law and Requires Dismissal of Plaintiffs' Claims.**

In the Seventh Circuit, "before dismissing a case . . . pursuant to a forum selection clause," the court must determine: whether the Plaintiffs' claims are "covered by the forum-selection clause" and whether it is "enforceable." *NC Cap., LLC v. Metabolomic Techs., Inc.*, 594 F. Supp. 3d 1073, 1078 (C.D. Ill. 2022) (citing *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) and *Abbott Lab'ys v. Takeda Pharm. Co.*, 476 F.3d 421, 424 (7th Cir. 2007)). This two-part analysis is governed by the law designated in the agreement's choice of law clause. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014); *see also Abbott Lab'ys*, 476 F.3d at 423 ("determining the validity and meaning of a forum selection clause" requires "reference to the law of the jurisdiction whose law governs the rest of the contract[.]"). Pursuant to the Parties' election, the Court must apply English law to determine whether the Forum Clause is applicable to Plaintiffs' claims. *NC Cap.*, 594 F. Supp. 3d at 1078. Based on the language of the Forum Clause and English law, the Forum Clause is applicable, and Plaintiffs must bring their claims in England.

*First*, the Forum Clause is broadly worded to encompass "***any claim that you have arising***

---

[9] While Defendants challenge this Court's jurisdiction over them, the Supreme Court has held that courts have discretion to dismiss for *forum non conveniens* without first resolving personal jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) ("*[F]orum non conveniens* may justify dismissal of an action though jurisdictional issues remain unresolved[.]").

***out of or in connection with your agreement with us or your use of OnlyFans*** . . . including . . . non-contractual disputes or claims." Ex. A at 13-14, § 16(a) (emphasis added). Plaintiffs' claims, each of which is indisputably premised on their communications with and payments to Creators made on OnlyFans, plainly arise out of the ToS and Plaintiffs' use of OnlyFans. ¶¶133–170; White Decl. ¶¶ 13–18. Under English law, "where parties have bound themselves by an exclusive jurisdiction clause effect should ordinarily be given to that obligation[.]" *Id.* The test for identifying an exclusive jurisdiction clause is "whether on its proper construction the clause obliges the parties to resort to the relevant jurisdiction." *Id.* The Forum Clause here expressly requires that "any claim…arising out of…your agreement with us or your use of OnlyFans" "*must*" be brought "in the courts of England and Wales." Ex. A at p. 13–14, § 16(a)) (emphasis added).

*Second*, the laws of England require enforcement of the Forum Clause. Once the court determines the Forum Clause applies to the dispute, the burden shifts under English law to Plaintiffs, as the party opposing enforcement, to show "strong reasons for departing from" the agreed-upon forum. White Decl. ¶ 18. Plaintiffs have not and cannot meet that burden. Contrary to Plaintiffs' conclusory allegations (¶¶ 27, 30), consumer form contracts are enforceable, and comparable procedural vehicles exist under English law to bring group claims. White Decl. ¶ 20, 46–58. Moreover, English courts can provide Plaintiffs with an adequate substantive remedy for each of their claims if they ultimately prevail. White Decl. ¶¶ 22–45. Indeed, another federal court has undergone a similar analysis and enforced the Forum Clause, requiring that plaintiff to bring her claims in England. *Muniz v. Fenix Int'l Ltd.*, 2021 WL 3417581, at *7 (N.D. Ga. June 28, 2021).

*Finally*, courts, including in this Circuit, routinely enforce forum selection clauses that require legal proceedings be instituted in England. *See, e.g.*, *M/S Bremen v. Zapata Off-Shore Co.*,

407 U.S. 1, 15 (1972) (enforcing forum selection clause designating England); *Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 250 (5th Cir. 2023) (same); *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1299 (11th Cir. 2021) (same); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1295 (9th Cir. 1998) (same); *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 157 (7th Cir. 1993) (same). Plaintiffs thus cannot meet their burden to show "strong reasons" that warrant alleviating Plaintiffs from their agreement to litigate their claims in England.

### 2. Federal Common Law Also Requires Dismissal.

While the Court need not apply federal common law to enforce the Forum Clause, the result would be the same. Forum selection clauses are presumptively valid and should be enforced "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor" dismissal. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 134 S. Ct. 568, 574 (2013) ("[W]hen the parties' contract contains a valid forum-selection clause, that clause . . . should be 'given controlling weight in all but the most exceptional cases[.]'"); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) ("forum-selection clauses . . . are prima facie valid."). Where, as Plaintiffs have done here, a party "act[s] in violation of the forum-selection clause, [the plaintiff] must bear the burden of showing that public interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 134 S. Ct. at 583; *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (dismissing claims "because [plaintiffs] pointed to no public interest to justify setting aside the contractual choice of forum.").

Moreover, courts in this Circuit have repeatedly enforced forum selection clauses designating a foreign forum even in "adhesive" consumer contracts or when the case involved state consumer protection claims. *See* ¶ 27; *Mueller*, 880 F.3d at 895 n.3 (rejecting argument that forum selection in consumer form contract "likely unenforceable"); *Johnson v. Pushpin Holdings, LLC*,

821 F.3d 871, 876 (7th Cir. 2016) (similar); *Pomerantz v. Int'l Hotel Co., LLC*, 359 F. Supp. 3d 570, 585 (N.D. Ill. 2019) (dismissing ICFA and fraud claims based on forum selection clause designating Mexico as exclusive forum). Plaintiffs have not – and cannot – point to any other public interest that warrants setting aside the contractual choice of forum. Whether the Court applies English or federal law, the Forum Clause requires dismissal under *forum non conveniens*.

**B.      Neither Defendant is Subject to Personal Jurisdiction in Illinois.**

Plaintiffs' Complaint also fails to establish personal jurisdiction over Defendants. Under Rule 12(b)(2), Plaintiffs must allege facts to show that the Court has general or specific jurisdiction over each Defendant. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). General jurisdiction "is all purpose; it permits a defendant to be sued in a forum for *any* claim, regardless of whether the claim has any connection to the forum state." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (emphasis in original). In all but "exceptional case[s]," a plaintiff can establish general jurisdiction only by showing that the defendant is either incorporated, or has its principal place of business, in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39, n.19 (2014). Specific jurisdiction, on the other hand, applies in a suit "arising out of or related to the defendant's contacts with the forum." *Brook*, 873 F.3d at 552. The focus is on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). The Complaint does not establish general or specific jurisdiction over either Defendant.

**1.      Neither Defendant is Subject to General Jurisdiction in Illinois.**

A court may only assert general jurisdiction over foreign corporations "when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697–98 (7th Cir. 2015).

As Plaintiffs concede, FIL and Fenix Internet are not "at home" in Illinois—they are neither incorporated nor have their principal place of business here. Taylor Decl. ¶ 2, 6. Defendants do not maintain property or offices in Illinois and do not have employees in the state. Taylor Decl. ¶ 10. Defendants' alleged web presence in Illinois does not confer general jurisdiction. *See be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (holding that a "highly interactive" website will not, alone, warrant general jurisdiction.). The Complaint contains no allegations that show that either Defendant had connections "so constant and pervasive" that general jurisdiction is present here.

### 2. Neither Defendant is Subject to Specific Jurisdiction in Illinois.

To establish specific jurisdiction, Plaintiffs must demonstrate that each Defendant has "(1) . . . purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citation omitted). Here, the Complaint fails to satisfy either element.

Tellingly, Plaintiffs include only one conclusory paragraph to allege specific jurisdiction. ¶ 24 ("Defendants regularly conduct business or solicit business, engage in other persistent courses of conduct and/or derive substantial revenue from products and/or services provided to individuals in the District and in this State . . . Defendants have purposefully established substantial, systematic, and continuous contacts with this District"). These conclusory allegations cannot establish that Defendants purposefully directed activity at or purposefully availed themselves to the forum state. *See, e.g.*, *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015) (holding threadbare, conclusory allegations without factual support are not entitled to an assumption of truth and are insufficient to

establish personal jurisdiction).

**No purposeful direction.** First, Plaintiffs' allegations fail to show that Defendants either purposefully directed their activities to, or purposefully availed themselves of, Illinois. Defendants maintain an interactive website that is accessible from any state. Neither Defendant has offices or employees in Illinois and Defendants have not specifically directed any business to Illinois through marketing, promotions, or events in the forum. Taylor Decl. ¶10–11. As such, Defendants have not directed their activities to Illinois. *See Gutierrez v. Wemagine AI LLP*, 2022 WL 252704, at *3 (N.D. Ill. Jan. 26, 2022) (no personal jurisdiction over online platform when "[t]here was no directed marketing specific to Illinois, and the fact that [the app] is used by Illinois residents does not, on its own, create a basis for personal jurisdiction over [Defendants]."). Moreover, the choice of law provision in the ToS opting for English law "cuts against jurisdiction in Illinois." *Incipio, LLC v. Under Armour, Inc.*, 2021 WL 3618277, at *3 (N.D. Ill. Aug. 16, 2021).

**No relation to the forum.** Plaintiffs' allegations fail to show that their claims arise out of, or relate to, Defendants' conduct with the forum state. The only connection between Defendants and Illinois is that Plaintiff McFadden is an Illinois resident, who chose to use the OnlyFans platform. ¶ 31. Plaintiffs allege no other connection between Defendants and Illinois because there is none. Establishing jurisdiction based on McFadden's alleged use of OnlyFans in Illinois would "impermissibly allow[] [the consumer's] contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289. Specific jurisdiction depends on "contacts that the '*defendant* himself' creates with the forum State," not those contacts the Plaintiffs create. *Id.* at 284. (emphasis added).

The fact that Fenix Internet collects payments made by Fans in Illinois from third-party processors is of no moment because Fenix Internet collects such payments from third-party

processors *wherever* they are located and distributes the funds collected through other third-party providers to content creators *wherever* they are located. Taylor Decl. ¶ 8. That conduct is not targeted at Illinois. *See, e.g., Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (finding defendant did not target Illinois residents where it used its technology on "every user-uploaded photo," not just on those uploaded in or by Illinois residents).

Finally, Plaintiffs cannot establish that FIL's conduct was "expressly aimed" at Illinois with the "knowledge that the effects would be felt" in Illinois. *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). Plaintiffs do not allege that FIL made allegedly fraudulent statements in Illinois or expressly aimed at Illinois. Specific jurisdiction cannot be conferred as "a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *Burger King v. Rudewicz*, 471 U.S. 462, 475 (1985). As the Seventh Circuit has warned, courts must ensure that a defendant is "not haled into court simply because the defendant owns or operates a website that is accessible in the forum state" even if that site is interactive. *See Advanced Tactical Ordnance Sys. LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014); *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019); ¶ 24.[10]

**No comportment with fair play.** Even if there were minimum sufficient contacts with Illinois, the exercise of specific jurisdiction "must also comport with traditional notions of fair play and substantial justice." *N. Grain*, 743 F.3d at 492. Only one plaintiff, McFadden, is a resident of Illinois, ¶ 31, and the other Plaintiff should not be able to bootstrap jurisdiction over Defendants for their respective claims through McFadden. *See Bristol-Meyers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 265 (2017) ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—

---

[10] Fenix Internet has established that Plaintiffs' allegation that it maintains a registered office in Chicago is false (Taylor Decl. ¶ 10) and cannot support specific jurisdiction over Fenix Internet.

does not allow the State to assert specific jurisdiction over the nonresidents' claims."). There is no support that the exercise of jurisdiction here would serve substantial justice.

### C.     Plaintiffs' Claims Are Barred by CDA 230 and the First Amendment.

No applicable law requires FIL to monitor individual chat messages exchanged between Creators and Fans, and the ToS expressly state that FIL is *not* obligated in this way. *See* Ex. A at 7, § 9.d, at 17, § 6.c, and at 23, § 9.d. Without any justification, Plaintiffs argue the opposite. By seeking to hold Defendants liable for content posted on OnlyFans and for Defendants' alleged failure to monitor or interfere with the content posted by Creators Plaintiffs' claims are barred by CDA 230 and the First Amendment to the U.S. Constitution.

### 1.     CDA 230 Mandates Dismissal of Plaintiffs' Claims.

CDA 230 bars Plaintiffs' claims because the entire Complaint seeks to hold FIL, an "interactive computer service" provider, together with its subsidiary Fenix Internet,[11] liable as the "publisher or speaker" of information "provided by another information content provider."[12] *Day v. TikTok, Inc.*, 2022 WL 595745, at *1–*3 (N.D. Ill. Feb. 28, 2022) (dismissing claims under CDA 230). At its core, CDA 230 protects a service provider from "lawsuits seeking to hold [it] liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone or alter content." *Doe v. Franco Prods.*, 2000 WL 816779, at *4 (N.D. Ill. June 22, 2000), *aff'd sub nom*. *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003); *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003) (holding that "entities that know the information's content

---

[11] Rule 8 demands dismissal of all claims against Fenix Internet because Plaintiffs' improperly lump both Defendants together, *see* Section D.1. If Fenix Internet is not dismissed, the Court must accept Plaintiffs' allegations as true that both Defendants operate OnlyFans, thus they are both entitled to raise a defense under CDA 230.

[12] In the Seventh Circuit, CDA 230 "functions as an affirmative defense" and although plaintiffs "ordinarily need not anticipate and attempt to plead around affirmative defenses [] dismissal may be appropriate if 'the factual allegations in the complaint unambiguously establish all the elements of the defense.'" *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023).

do not become liable for the sponsor's deeds."); *see also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.").

*First*, as the ToS explain, while FIL "facilitate[s] Fan/Creator Transactions by providing the OnlyFans platform and storing Content," it is "not a party to the Standard Contract between Fan and Creator or any other contract which may exist between a Fan and Creator." Ex. A at 17-18, § 8(a). Plaintiffs admit that FIL "runs a subscription-based social media platform" and that Fenix Internet "conducts and transacts all monetary transactions on the website OnlyFans.com." ¶¶ 1, 42. Thus, it is undisputed that FIL and Fenix Internet are the "provider . . . of an interactive computer service." *See Day*, 2022 WL 595745, at *2.

*Second*, Plaintiffs treat Defendants "as the publisher or speaker" of content posted to OnlyFans by Creators or the agencies used by Creators to help them run their accounts. Plaintiffs allege that they were harmed because Creators posted "inauthentic" content and that Defendants are liable for that alleged harm because they failed to exercise editorial discretion to block this content from appearing on the OnlyFans platform. *E.g.*, ¶ 197 ("[I]nstead of exercising its discretion in good faith and consistent with customers' reasonable expectations, OnlyFans abuses that discretion by facilitating deceit by Creators, taking no action to stop that deceptive conduct…"). Plaintiffs thus target the very editorial discretion that CDA 230 protects.

*Doe v. Franco* is instructive. There, the Court dismissed tort claims against the defendants, which were hosts of websites where third parties posted and sold videos of intercollegiate athletes taken from hidden cameras. *Franco*, 2000 WL 816779, at *1. The Court reasoned that "by seeking to hold [defendants] liable for their decision not to restrict certain content" they were "seeking to

hold them liable in a publisher's capacity." *Id.* at *4. Likewise here, Plaintiffs seek to hold Defendants liable for failing to "monitor[] and control[] use of [OnlyFans]," ¶ 70, and failing to "withhold" or "forfeit" Creator earnings in cases where a Creator allegedly violated the ToS. ¶ 125. CDA 230 mandates that Defendants cannot be held liable for their purported failure to filter or moderate content. *Day*, 2022 WL 595745, at *2 (dismissing claims under CDA 230 because "plaintiff's complaint does not allege defendant created or posted the videos. It only alleges defendant allowed and did not timely remove the videos posted by someone else.").

*Finally*, Plaintiffs do not – and cannot – allege that Defendants contributed to the creation of any content. *Roommates.Com*, 521 F.3d at 1168 ("[A] website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct."). Regardless of the nature of the content, it is undisputed that the content was *not* created by Defendants, and claims arising out of such content are appropriately barred by CDA 230. *Chicago Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.*, 519 F.3d 666, 672 (7th Cir. 2008), as amended (May 2, 2008) ("[G]iven § 230(c)(1) [plaintiff] cannot sue the messenger just because the message reveals a third party's plan to engage in unlawful discrimination."). Plaintiffs' allegations, on their face and taken as true, establish all of the elements of CDA 230, which is a total bar to Plaintiffs' claims.

## 2. The First Amendment Bars Plaintiffs' Claims.

Plaintiffs' claims also are barred because they interfere with Defendants' First Amendment rights to determine what to publish or remove from their platform. Courts have repeatedly held that the First Amendment protects against legal actions that seek to dictate how online services disseminate or curate content. *See, e.g.*, *Reno v. ACLU*, 521 U.S. 844, 874-79 (1997). Services like Defendants' "make[] decisions about what content to include, exclude, moderate, filter, label,

restrict, or promote, and those decisions are protected by the First Amendment." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–87 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) (collecting cases finding that online communication services have First Amendment editorial rights). Simply put, "the presentation of an edited compilation of speech generated by other persons . . . fall[s] squarely within the core of First Amendment rights. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 570 (1995).

These established First Amendment protections bar Plaintiffs' claims, which are predicated on Defendants' purported failure to "monitor" content published on its platform—an activity that is rooted in the "exercise of [a publisher's] editorial control and judgment." *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974); ¶¶ 73, 125–26 (falsely alleging that OnlyFans "promises that [it] moderates every single message and communication between Fan and Creator and commits to remove bad actors from the site" and OnlyFans "fails" to "monitor" content "in regard to Creators using third parties to communicate . . . with Fans."). Like CDA 230, Plaintiffs cannot evade the First Amendment by trying to recharacterize their claims as something other than targeting Defendants for their discretionary editorial decisions as to third-party content.

### D. Plaintiffs Also Fail to State a Claim.

Under Rule 8(a), the Complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under Rule 12(b)(6), the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming the truth of the allegations. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Further, any "claim that 'sounds in fraud'—in other words, one that is premised

18

upon a course of fraudulent conduct" – implicates Rule 9(b)'s "heightened pleading requirements." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

### 1. All of Plaintiffs' Claims Against Fenix Internet Fail. (Counts II–VIII).

Under Rule 8, the Court need not consider Plaintiffs' claims against Fenix Internet because Plaintiffs do nothing more than name the entity and assert only jurisdictional allegations. *See Shannon v. First Franklin Fin. Corp.*, 2009 WL 2867742, at *3 (N.D. Ill. Sept. 2, 2009). Rule 8 requires dismissal where, as here, Plaintiffs' allegations fail to put Fenix Internet on notice of the nature of the claim and the grounds on which it rests. Plaintiffs lump Fenix Internet in with FIL, without any explanation as to how or why Fenix Internet is liable for FIL's purported conduct. For example, Plaintiffs allege their "claims arise primarily out of Defendants' misleading, unlawful conduct alleged herein." ¶ 27; *see also* ¶ 204 ("Defendants misrepresented . . . that, by purchasing paid subscriptions to a Creator's page, by paying to send or receive messages to Creators (including by sending tips), or by paying for a Creator's PPV content, [Plaintiffs] would be interacting directly with the Creators."; ¶ 218(a) (Defendants deceived Plaintiffs by "misrepresenting to them that they were interacting with Content Creators directly on OnlyFans when in fact they were interacting with third parties impersonating Content Creators."); ¶ 264(a) (same). But Plaintiffs do not tie any of this conduct to Fenix Internet and, as such, fail to meet Rule 8's pleading standard.

Plaintiffs cannot save their pleading with the lone allegation that Fenix Internet processes payments for transactions conducted on OnlyFans. ¶ 42. This does nothing to show how Fenix Internet's conduct meets any element of any of Plaintiffs' claims. Plaintiffs' improper attempt to impute liability for the alleged actions of FIL to Fenix Internet should be disregarded, and Counts II – VIII should be dismissed as to Fenix Internet. *See Shannon*, 2009 WL 2867742, at *3.

### 2. Plaintiffs' Contract and Unjust Enrichment Claims Fail (Counts I–II).

Plaintiffs' claims for breach of contract, good faith and fair dealing, and unjust enrichment

must be dismissed, as the Complaint fails to allege facts establishing any breach of the ToS.[13] *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729, 737 (N.D. Ill. 2021) (for breach of contract, plaintiffs must establish, among other things, breach by defendant); *LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008) (violation of the duty of good faith and fair dealing "is not an independent cause of action but is merely a basis for a breach of contract action"). Plaintiffs' contract claim rests on allegations that "OnlyFans does not comply with its promises to Plaintiffs and Class Members that, by paying for services on and through the OnlyFans website, they would be able to communicate directly with Creators." ¶ 196; *see also* ¶ 191–92. But Plaintiffs have not identified *any provision* in the ToS that makes this alleged promise.

Plaintiffs make their claims based on three equally flawed theories: (1) that Creators breach their obligation not to "share" their account if they hire a third party to help them manage it; (2) that paying for content gives a Fan a legally enforceable right "to communicate directly with Content Creators" and (3) that Defendants breached the covenant of good faith and fair dealing by failing to withhold Creator earnings where Creators may have hired a third party to help them manage their account.

Plaintiffs' theories fail because the ToS *expressly permit* the conduct that Plaintiffs claim is a breach. Ex. A at 21, § 7 (discussing the use of third-party managers). As to Plaintiffs' first

---

[13] Plaintiffs impermissibly seek to expand the terms of their agreements with FIL through their allegations and some "other related documentation." ¶ 187 (Plaintiffs allege they and OnlyFans "have contracted for services, as set forth [in the Complaint] and as described in the [ToS] and other related documentation."). Extracontractual statements cannot be used to contradict or modify the unambiguous language in the ToS because the ToS contain an express integration clause. Ex. A at 13, Section 15(h) ("The Terms of Service form the entire agreement between us and you regarding your access to and use of OnlyFans, and supersede any and all prior oral or written understandings or agreements between us and you.); *see TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 636 (7th Cir. 2007) (holding that when a contract is facially unambiguous and contains an integration clause, the consideration of extrinsic evidence is barred).

theory, Plaintiffs do not cite to any provision in the ToS that prohibit Creators from using third parties to assist them in managing their accounts. Plaintiffs point to the provision stating that users must "not sell, rent, transfer, or share [their] account or any Content obtained from [their] use of OnlyFans to or with anyone else." Ex. A at 30. Courts must interpret contractual terms in context and should interpret clauses to give meaning to each term. White Decl. ¶ 34. Here, "share" is one of a list of verbs including "sell," "rent," and "transfer" – each of which connotates legal ownership. Read in context, "share" means that the Creator should not change or divide ownership of their account which is entirely consistent with and gives meaning to the language in Section 7 of the ToS that "every Creator is bound personally by the [ToS]" and "[i]f [they] have an agent, agency, management company or other third party which assists [them] with the operation of [their] Creator account (or operates it on [their] behalf), this does not affect [their] personal legal responsibility." Ex. A at 21, § 7. Plaintiffs' interpretation ignores this context and strips Section 7 of meaning. As such, Plaintiffs' claim that any Creator that "share[d]" their account is in breach of the ToS necessarily fails.

Plaintiffs' second theory likewise fails. Plaintiffs allege that "when Fans pay for services, the Creator must perform their part of the transaction, including providing the customized content paid for by the Fan" and that paying for such content "would allow them to communicate directly with Content Creators." ¶¶ 189, 191. The ToS provide that:

> "When you receive confirmation . . . that the Fan/Creator Transaction has been confirmed, you must perform your part of such Fan/Creator Transaction (for example, by allowing the Fan to view the Content on your Creator account and/or providing the customised Content paid for by the Fan and/or allowing the Fan to use the fan interaction function paid for (as applicable))." Ex. A at 22, § 8(c).

Plaintiffs have not alleged that any Creator failed this contractual obligation. Plaintiffs do not complain that they paid to send a message and could not, that they failed to receive content they paid for, or that their messages were incorrectly prioritized. In fact, Plaintiffs admit they

communicated with Creators on multiple occasions. For example, DeFranza sent a message to Valentina "asking if they could meet in person" and he quickly received a response. ¶¶ 143–44. Even if a Creator failed to perform their part of any transaction with a Fan, FIL is not in breach because FIL is not a party to any Fan/Creator Transaction. Ex. A at 21, § 8(a).

Plaintiffs' third theory improperly contends that, because FIL is "authorized" to "withhold, forfeit, and return Creator earnings to Fans" when a Creator "breaches" the ToS, failing to do so when Creators employ managers (whether or not they do so in a deceptive manner) is a breach of FIL's duty to "act in good faith when they are invested with a discretionary power over the other party." ¶¶ 193–94. The ToS authorize Creators to use managers to assist them in operating their accounts, and "parties to a contract are entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of the contract." *LaSalle Bank*, 588 F. Supp. 2d at 857; White Decl. ¶ 36. Plaintiffs cannot premise their contract claim on FIL's alleged failure to exercise its discretion to stop a practice that the ToS expressly allow.

Finally, in Illinois, unjust enrichment claims can only survive if the predicate claim (here, breach of contract) survives. As such, Plaintiffs' unjust enrichment claim fails with the breach of contract claim. *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007).

### 3. Plaintiffs' Fraud-Based Claims Fail to Meet the Heightened Pleading Requirements Under FRCP 9(b) (Counts III—VIII).

Rule 9(b) imposes a heightened pleading standard for any claim arising from fraudulent conduct, under which a "plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F. 3d 770, 776 (7th Cir. 2016). Indeed, "the facts alleged in a complaint attempting to show fraud . . . must show not just the mere possibility of a fraud, but that fraud is a 'necessary or probable inference from the facts alleged.'" *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016).

All of Plaintiffs' non-contract claims (Counts III–VIII) sound in fraud and must meet Rule 9(b)'s requirements. *Borsellino*, 477 F.3d at 507 (applying Rule 9(b) to claims sounding in "fraud").[14] Plaintiffs' allegations fall well short of this exacting standard.

> ### a.    Plaintiffs fail to allege a false or deceptive statement or practice.

Each of Plaintiffs' fraud-based claims (Counts III–VIII) must contain specific allegations that Defendants either made a false statement or omission of fact,[15] or that Defendants engaged in a deceptive, unfair, or unlawful practice.[16] Plaintiffs fail to do so. Like their contract claim, Plaintiffs' fraud-based claims fail because the alleged fraudulent conduct—not preventing Creators from engaging third parties to assist in operating their accounts—was disclosed and authorized by the ToS. *See, e.g.*, *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 301 (D.N.J. 2019) ("When a [NJCFA] claim is based on a valid contract, a court will dismiss [the] claim if the conduct alleged is expressly authorized by the terms of that contract."); *see also* White Decl. ¶ 45.

> ### (i)    Defendants' alleged "false statements" cannot support Plaintiffs' fraud-based claims.

Plaintiffs' first theory of fraud rests on allegations that "Defendants made standardized

---

[14] Courts routinely apply Rule 9(b) to the non-contractual claims alleged here. *E.g.*, *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (ICFA (deceptive) claim); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (ICFA (unfair) claim); *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (NJCFA claim); *Penn, LLC v. Freestyle Software Inc.*, 2023 WL 5994642, at *7 (D.N.J. Sept. 15, 2023) (negligent misrepresentation).

[15] Plausible fraud claims must allege "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Hous. Auth. of City of Bayonne v. Hanna*, 2011 WL 5828521, at *3 (N.J. Super. Ct. App. Div. Nov. 21, 2011) (New Jersey law); *see also Rustom v. Rustom*, 2018 WL 3997880, at *7 (N.D. Ill. Aug. 21, 2018) (similar under Illinois fraud). Similarly, "[t]o state a claim for negligent misrepresentation, a plaintiff must show '(1) an incorrect statement, (2) negligently made, (3) upon which plaintiff justifiably relied, and (4) resulted in economic loss or injury as a consequence of that reliance.'" *Noble v. Samsung Elecs. Am., Inc.*, 2018 WL 801590, at *5 (D.N.J. Feb. 8, 2018).

[16] *Benson*, 944 F.3d at 646 (ICFA); *Harnish v. Widener Univ. Sch. of L.*, 931 F. Supp. 2d 641, 648 (D.N.J. 2013) (NJCFA).

false representations to Plaintiff[s]" that, "by making payments on the OnlyFans platform, they would be able to interact directly with Content Creators" and that OnlyFans would "allow [Creators] to monetize their content while developing authentic relationships with their fanbase." *E.g.*, ¶ 246. *First*, Plaintiffs do not identify any false or deceptive statement or act made by Defendants to support these claims. *Second*, even if the Court were to accept Plaintiffs' broad allegations of fraud as true, the alleged fraudulent statements would not be actionable. *Third*, Plaintiffs' allegations regarding the allegedly deceptive conduct—*i.e.*, that they were not interacting directly with Creators—are each made "upon information and belief," which is insufficient to allege fraud.

*Fleury* is instructive. There, plaintiff complained that GM engaged in fraud and violated the ICFA by misrepresenting the purchased vehicle's ability to operate on E85 fuel. *Fleury v. Gen. Motors LLC*, 654 F. Supp. 3d 724, 731–32 (N.D. Ill. 2023). Plaintiff pointed to several allegedly false and misleading statements which he claims "encourage the use of E85" when, in reality, exclusive use of E85 damaged his vehicle. *Id.* at 732. The court rejected this argument, reasoning that "[s]tating that Flex Fuel vehicles can run on E85—and even encouraging such use—does not contradict the truth that using E85 exclusively may cause damage." *Id.* This analysis applies here. Stating that "[s]ubscribing to a Creator gives you *exclusive access* to private content being posted by that Creator and gives you *access to be able to communicate with them directly* via the direct messages interface (DM)," (¶¶ 69, 246(a), 271(a), 282(a) (emphasis added)), "does not contradict the truth" that Creators may engage managers to assist them in responding to messages, which is an authorized practice under the ToS (Ex. A at 21, § 7). *Fleury*, 654 F. Supp. 3d at 732.

Contrary to Plaintiffs' reading, FIL does not "guarantee" authentic relationships between Creators and Fans; the OnlyFans platform "allows" Creators to monetize their content by

streaming live videos directly to Fans, posting exclusive content, and/or sending messages, should they choose. FIL offers no specific or enforceable guarantee regarding any relationship between Creators or Fans.[17] The nature of the relationship between a Creator and a Fan is governed by the Standard Contract between Fan and Creator. The Plaintiffs' inaccurate interpretation, statements concerning "authentic relationships" on OnlyFans and the ability to interact with Creators are insufficient to support a fraud claim. *See, e.g.*, ¶ 11 (OnlyFans is "a place for authentic relationships"); ¶ 67 ("OnlyFans . . . allows Creators and users to develop personal, 'authentic relationships.'"). Courts do not impute liability for statements like these, about the nature of a product where "'the truth or falsity of which cannot be precisely determined.'" *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 962 (N.D. Ill. 2021). Here, Plaintiffs allege nothing more than that FIL describes the mission of OnlyFans is to provide a platform to enable interactions between Creators and Fans and to provide the opportunity to build "authentic relationships." ¶ 1. There is no way that OnlyFans could ever, nor does it in fact, guarantee the intangible nature of a relationship between two contracting parties. This cannot form the basis of a fraud claim as a matter of law. *See Castaneda v. Amazon.com, Inc.*, 2023 WL 4181275, at *7 (N.D. Ill. June 26, 2023) (statements that gaming console allowed for "deeper immersion" were unactionable).

Even if Plaintiffs had alleged actionable misstatements, each allegation is inadequately pleaded on information and belief, which is insufficient under Rule 9(b) to allege a false or misleading statement. *See, e.g.*, ¶¶ 140, 146, 148, 162, 164 (allegations made "upon information and belief"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) ("But when someone alleges fraud based on information and belief, not just any grounds will do. The grounds for the plaintiff's suspicions must make the allegations

---

[17] At no point do the ToS reference the phrase "authentic relationship." *See* Ex. A.

plausible, even as courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail."). As discussed in Section D.3., *supra*, Plaintiffs have alleged no "plausible" allegations to support their conclusion that Defendants engaged in fraudulent practices. As the Seventh Circuit has warned, "a public accusation of fraud can do great damage to a [defendant] before [it] is exonerated in litigation (should the accusation prove baseless)." *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) ("Allegations based on 'information and belief'. . . can mean as little as 'rumor has it that . . . .'"). Plaintiffs' fraud claims fail under Rule 9(b) and must be dismissed.

### (ii) Defendants' alleged omissions cannot support Plaintiffs' fraud-based claims.

Plaintiffs' second theory is the inverse of the first: that "Defendants omitted, suppressed, and concealed the material fact in their standardized representations" to Plaintiffs "that Content Creators with whom they paid to interact on the OnlyFans website engaged third parties to impersonate them and to interact with Fans[.]" ¶¶ 247, 272. "[T]o state a claim for fraudulent concealment, [plaintiff] must allege that [defendant] concealed a material fact when under a duty to disclose that fact to him." *Fleury*, 654 F. Supp. 3d at 735. "The duty to disclose arises only in certain situations, including where the 'plaintiff and defendant are in a fiduciary or confidential relationship' and 'where plaintiff places trust and confidence in defendant thereby placing defendant in a position of influence and superiority over plaintiff.'" *Id.* Similar to the decision in *Fleury*, no such fiduciary or confidential relationship exists here. *Id.* at *7 (rejecting argument that special relationship existed based on car manufacturer's "'knowledge of its vehicles'"). To the contrary, the ToS clearly provide that FIL is "not a party to the Standard Contract between Fan and Creator or any other contract which may exist between a Fan and Creator, and [is] not responsible for any Fan/Creator Transactions." Ex. A at 17-18, § 8(a). Moreover, the plain

language of the ToS authorizes the use of third parties to assist Creators in operating their accounts. This is fatal to Plaintiffs' fraud-based omission claims. Ex. A at 21, § 7; *see also Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009) (omission under NJCFA occurs when a material fact is "knowingly concealed").

> **b.    Plaintiffs fail to allege they read any false or deceptive statement, much less reasonably relied on such statement.**

Plaintiffs' common law fraud and negligent misrepresentation claims (Counts V, VII, and VII) also fail because Plaintiffs must have seen and then reasonably relied on the alleged misstatement. Even accepting Plaintiffs' allegations as true that the ToS (or any of the other statements from the OnlyFans website and YouTube that are alleged in the Complaint) were false or misleading, nowhere in their 292-paragraph Complaint do Plaintiffs allege they ever saw or read them, which alone mandates dismissal of these claims. *Fleury*, 654 F. Supp. 3d at 732 (dismissing fraud claims, in part, where plaintiff "d[id] not allege that he read the [manual containing allegedly false statements] before buying" his vehicle); *Amerigas Propane, L.P. v. BP Am., Inc.*, 691 F. Supp. 2d 844, 853 (N.D. Ill. 2010) (fraud claims do not satisfy Rule 9(b) where plaintiff does not plead they received the misrepresentation).[18]

Even if Plaintiffs claim to have read the alleged misstatements, they still cannot plausibly allege that they reasonably relied on them. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) ("In determining whether [plaintiff's] reliance was justified, we must consider all of the facts that [plaintiff] knew, as well as those facts [plaintiff] could have learned through the exercise of ordinary prudence."); *see also id.* (reliance "can be determined as

---

[18] McFadden alleges he joined OnlyFans in August 2020 and paid for content between January and April 2022. ¶¶ 156–160. DeFranza alleges he joined OnlyFans and paid for content in May 2021. ¶¶ 133–144. Yet, most of the statements identified as allegedly fraudulent in Plaintiffs' Complaint were made long after these purchases. Thus, Plaintiffs could not have relied on them. *See, e.g.*, ¶ 71 n.35 (June 21, 2023 YouTube video); ¶ 74 n.38 (same); ¶ 75 n.39 (July 27, 2022 Tweet); ¶ 75 n.41 (Nov. 22, 2022 YouTube video).

a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn") (citing *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 295 Ill. App. 3d 567, 575–76 (1st Dist. 1998)). As discussed in Section D.3, *supra*, none of the misstatements Plaintiffs allege are false or misleading. The ToS authorize the use of third parties to assist Creators in running their accounts, and, as Plaintiffs' Complaint makes clear, the fact that Creators may elect to use third parties to assist in running their accounts was publicly known before either Plaintiff alleged they paid to interact with Creators. ¶¶ 113–114, 161. Indeed, Plaintiffs allege that *FIL* should have known about this practice, in part, because of the numerous online news articles discussing this arrangement that Plaintiffs themselves cite and that predate the Complaint. ¶¶ 113–114. Moreover, up until and after their Complaint was filed, Plaintiffs have *continued to subscribe to and tip Creators*. Taylor Decl. ¶ 20, 22. Plaintiffs' claims for fraud and negligent misrepresentation thus fail to plausibly allege how the alleged misstatements influenced their actions or that any of *their* reliance was reasonable and must be dismissed. *See Dr.'s Data, Inc. v. Barrett*, 2011 WL 5903508, at *11 (N.D. Ill. Nov. 22, 2011) (dismissing fraud claims where plaintiffs failed to allege the statements actually "'flowed to plaintiffs and influenced their actions.'").

> **c. Plaintiffs' fraud-based claims fail because they merely repeat the breach of contract claim.**

Plaintiffs' fraud-based claims independently fail because they are nothing more than an improper repeat of Plaintiffs' breach of contract claim "dressed up in the language of fraud." *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011) ("[F]raud claims must contain something more than reformulated allegations of a contractual breach. . . . [B]reach-of-contract allegations dressed up in the language of fraud . . . cannot support statutory or common-law fraud claims."); *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901 (7th Cir. 2006) ("holding that

'[a] breach of contractual promise, without more, is not actionable under the [ICFA].'"). Plaintiffs'

New Jersey fraud and negligent misrepresentation claims fail for the same reasons. *See Coda*, 409

F. Supp. 3d at 301–02 ("[W]hen a [NJCFA] claim is based on a breach of contract, Plaintiff must

allege a 'substantial aggravating circumstance,' demonstrating that the defendant's behavior

'stands outside the norm of reasonable business practice in that it will victimize the average

consumer.'"); *Intimateco LLC v. Apparel Distribution, Inc.*, 2023 WL 7986336, at *6 (D.N.J. Nov.

17, 2023) ("'[A] tort remedy does not arise from a contractual relationship unless the breaching

party owes an independent duty imposed by law.'").

In other woards, to plead viable fraud claims, Plaintiffs must allege fraudulent acts that are

"distinct from the alleged breach of contract." *Greenberger*, 631 F.3d at 401; *see also M.W. Widoff,

P.C. v. Encompass Ins. Co. of Am.*, 2012 WL 769727, at *4 (N.D. Ill. Mar. 2, 2012) ("The

deceptive act must involve something more than the promise to do something and a corresponding

failure to do it."). Here, Plaintiffs' contractual and fraud-based claims rest on the same allegations.

¶¶ 218, 246, 264, 271, 282. Plaintiffs' fraud-based claims accordingly fail.

### 4. Plaintiffs Fail to State a Claim Under ICFA (Count IV).

Plaintiffs' ICFA (unfair practice) claim is premised on the same allegations as Plaintiffs

other claims (¶ 232) and similarly fails. A business practice is unfair if (1) "the practice offends

public policy;" (2) "it is immoral, unethical, oppressive, or unscrupulous;" or (3) "it causes

substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417–18

(2002). Plaintiffs only make conclusory allegations that these representations offended public

policy and were immoral. ¶¶ 233–34. The Court "need not accept as true any legal assertions or

recital of the elements of a cause of action 'supported by mere conclusory statements.'" *Vesely v.

Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014).

Even if Plaintiffs' allegations are sufficient to survive Rule 8 scrutiny, Plaintiffs' claim still fails. *First*, to offend public policy, conduct must "violate[] a standard of conduct embodied in a statute, the common law, or otherwise." *Leszanczuk v. Carrington Mortg. Servs., LLC*, 21 F.4th 933, 940–41 (7th Cir. 2021). Plaintiffs do not allege any standard of conduct Defendants violated, nor do they allege that public policy requires FIL to guarantee that Plaintiffs' interactions with Creators live up to *Plaintiffs'* expectations. *See, e.g.*, *Fleury*, 654 F. Supp. 2d at 734 ("[P]ublic policy does not require GM's vehicles to live up to Fleury's subjective expectations.").

*Second*, a business model is only considered "immoral, unethical, oppressive, or unscrupulous" if it gives the consumer little choice but to submit to it. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 609–10 (7th Cir. 2013) (dismissing claim in part because plaintiff "never lacked a meaningful choice to avoid expensive lender-placed property insurance"). Plaintiffs do not contend a lack of choice in their decision to open an OnlyFans at all or to pay to message certain Creators. Nor can they. In fact, Plaintiffs admit that they can view Creators content for free. ¶ 65 ("Standard pages usually entail free subscriptions[.]").

*Finally*, substantial injury only exists where, among other things, the injury is "'one that consumers themselves could not reasonably have avoided.'" *Fleury*, 654 F. Supp. 3d at 734. Plaintiffs chose to engage with (and pay to message) certain Creators after being informed of and agreeing to the ToS, which alerted them that some Creators may engage third parties to assist in the management of their account. Plaintiffs easily could have chosen not to pay for that access. Instead, Plaintiffs have continued to subscribe to Creators and pay for access to content even after filing their Complaint. Taylor Decl. 20, 22. Because Plaintiffs' injury—if there were one—was avoidable, they have failed to allege substantial injury. *Id.*

## CONCLUSION

The Court should grant the Defendants' Motion to Dismiss under the *forum non conveniens* doctrine, or, in the alternative for lack of personal jurisdiction and failure to state a claim.

Dated: December 18, 2023

Respectfully submitted,

By: */s/ Matthew L. Kutcher*

Matthew L. Kutcher (#6275320)
Jamie D. Robertson (#6345890)
Mariah A. Young (#6339861)
**COOLEY LLP**
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Tel.: (312) 881-6500
mkutcher@cooley.com
jdrobertson@cooley.com
mayoung@cooley.com

Michelle Doolin (*pro hac vice*) (CA 179445)
**COOLEY LLP**
10265 Science Center Drive
San Diego, CA 92121
Tel.: (858) 550-6000
mdoolin@cooley.com

Kyle C. Wong (*pro hac vice*) (CA 224021)
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel.: (415) 693-2000
kwong@cooley.com