## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| PHILLIP MCFADDEN AND JOHN P. DEFRANZA, Individually and on Behalf of All Others Similarly Situated, | No. 23-cv-06151 |
| Plaintiffs, | Judge John F. Kness |
| v. | |
| FENIX INTERNET, LLC and FENIX INTERNATIONAL LIMITED, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This case involves OnlyFans, a social media platform on which individuals called "Creators" perform online for subscribers called "Fans" who pay a fee to watch Creators post performative material (often of a salacious nature). Fans can also pay extra to engage in intimate online communications with their favorite Creators. Plaintiffs Phillip McFadden and John P. DeFranza, themselves Fans, seek to represent a class of Fans who, they contend, have been harmed by OnlyFans's misleading conduct: deceiving users into thinking that they are developing authentic relationships with Creators when many of the highest-earning Creators deceptively outsource their interactions with Fans to others. Plaintiffs assert that Defendants Fenix International Limited ("OnlyFans") and Fenix Internet, LLC[1] are liable in

---

[1] OnlyFans is an English company registered in the United Kingdom. (Dkt. 1 ¶ 34.) Defendant Fenix Internet, LLC, a wholly owned subsidiary, is a Delaware registered limited

contract, tort, and under Illinois and New Jersey law for this deceptive conduct.

A threshold question raised by Defendants' motion to dismiss has little to do with the nature of Defendants' purported business practices and instead requires the Court to delve into the depths of English law on the propriety of mandatory forum selection clauses. That is because the OnlyFans terms of service, governed by English law, require claims to be brought in the Courts of England and Wales. Defendants seek to dismiss the complaint under the doctrine of *forum non conveniens*, a common law doctrine permitting dismissal where there are strong reasons for believing that the case should be litigated in a foreign jurisdiction.

What at first appears to be a straightforward application of the parties' agreement is made more complex by governing precedent mandating that the law of the contract (here, English law) govern the validity of the forum selection clause. This means that the Court must determine what English law has to say about the enforceability of a forum selection clause that purports to bind United States consumers. Adding additional complexity are statutory efforts by the United Kingdom (and, formerly, the European Union) to amend the common law to protect the rights of their own domestic consumers from "unfair terms" in consumer contracts—an approach that contrasts with traditional common law principles favoring the enforcement of parties' agreements.

Put succinctly, the primary question is whether it is unlawful under English

---

liability corporation that conducts monetary transactions on the OnlyFans.com website. (*Id.* ¶¶ 37–44.)

law for a United Kingdom-based social media company to require United States consumers to bring claims in English court where the parties speak English, chose English law in the contract, and agreed to litigate in the United Kingdom. After analyzing applicable treatises and statutes, and having conducted a Rule 44.1 foreign law hearing, the Court is satisfied that the forum selection clause in the OnlyFans terms of service is enforceable under the common law. Moreover, even if the common law were displaced by statutory interventions, the forum selection clause would not be considered an unfair term. Accordingly, Defendants' motion to dismiss (Dkt. 21) is granted on *forum non conveniens* grounds.

## I.    BACKGROUND

Founded in 2016, OnlyFans is a subscription-based social media platform that, according to Plaintiffs, is centered around creating "authentic relationships" between Fans and Creators. (Dkt. 1 ¶ 1.) OnlyFans allows Creators to monetize their (often adult) content by encouraging users to create an OnlyFans account and to pay to access exclusive content through those subscriptions. (*Id.* ¶¶ 2–3.) For instance, Fans can pay to directly message ("DM") Creators. (*Id.* ¶ 2.) OnlyFans retains 20% of the revenue Fans pay to access Creators' content, including payments for subscriptions, exclusive content, and monetary tips sent by users to exchange DMs or access other content. (*Id.* ¶ 5.) OnlyFans' popularity has mushroomed since 2020, largely fueled by adult content. (*Id.* ¶ 3.)

According to Plaintiffs, OnlyFans' claims of facilitating authentic communications are deceptive because many of the highest-earning creators

surreptitiously outsource the job of interacting with users to third-party agencies or management companies. (*Id.* ¶¶ 7, 101–18.) These third parties allegedly hire account managers to pretend to be OnlyFans models, including while "sexting" fans. (*Id.* ¶ 8.) In short, Plaintiffs allege that OnlyFans knows that third party companies pose as Creators without informing Fans, or facilitates such conduct, thereby selling the illusion of intimacy between Fans and Creators. (*Id.* ¶¶ 9–20, 91–100, 124–32.) Plaintiffs say this violates OnlyFans's terms of service. (*Id.* ¶¶ 21–22, 76–90.)

Plaintiffs Phillip DeFranza and McFadden allege that they used the OnlyFans platform to DM Creators and believed they were communicating with the Creators directly, but third parties in fact impersonated the Creators they messaged. (*Id.* ¶¶ 133–72.) Plaintiffs seek to bring a nationwide class of OnlyFans users under Rule 23(b)(2) (with Illinois and New Jersey subclasses) and a nationwide class of OnlyFans users under Rule 23(b)(3) (with Illinois and New Jersey subclasses). (*Id.* ¶¶ 174–76 (defining the proposed classes).) Plaintiffs bring claims for breach of contract (Count I); unjust enrichment (Count II); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. Ann. §§ 505/1–505/12 (Counts III–IV); Illinois common law fraud (Count V); violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.* (Count VI); New Jersey common law fraud (Count VII); and New Jersey negligent misrepresentation (Count VIII). (*Id.* ¶¶ 186–292.) Defendants move to dismiss under the doctrine of *forum non conveniens*, or, in the alternative, under Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 21.)

## II.    LEGAL STANDARD

*Forum non conveniens* is a common law doctrine permitting a district court to dismiss a case "when it determines that there are strong reasons for believing it should be litigated in the courts of another, normally a foreign, jurisdiction." *Deb v. Sirva, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) (internal quotation omitted). In its current form, the doctrine applies in federal court "only when the other jurisdiction is a foreign one." *Id.* A court may exercise its discretion to dismiss a case under the *forum non conveniens* doctrine when "(1) an alternative forum has jurisdiction to hear the case and (2) trial in the chosen forum would prove, disproportionate to the plaintiff's convenience, oppressive and vexatious to the defendant; or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 357 (7th Cir. 2022) (cleaned up). Under the latter half of this analysis, courts must "balance the public and private interest factors of the alternative forum." *Id.*

Although a defendant invoking the doctrine ordinarily "bears a heavy burden in opposing the plaintiff's chosen forum," *Deb*, 832 F.3d at 806, the calculus changes "when the parties' contract contains a valid forum-selection clause." *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013). In that situation, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases," the "plaintiff's choice of forum merits no weight," and the plaintiff "bears the burden of establishing that transfer to the forum for which the parties

bargained is unwarranted." *Id.* (cleaned up). Because any inconvenience the parties would suffer by being forced to litigate in the contractual forum was foreseeable at the time of contracting, the court may not consider private-interest factors in determining whether the case should proceed in the preselected forum; rather "a district court may consider arguments about public-interest factors only." *Id.* at 64. Because the public-interest factors will rarely outweigh the forum choice, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

## III.   DISCUSSION

OnlyFans moves to dismiss under the doctrine of *forum non conveniens*, or in the alternative, for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 21.) Because the Court grants the motion to dismiss under *forum non conveniens*, the Court need not address Defendants' alternative grounds for dismissal.

### A.   The Law of the Contract Governs Validity of the Forum Selection Clause

Defendants move to dismiss Plaintiffs' complaint because the OnlyFans terms of service provide that for consumers who reside outside of the United Kingdom or the European Union, "any claim . . . arising out of or in connection with your agreement with us or your use of OnlyFans . . . must be brought in the courts of England and Wales." (Dkt. 1-1 at 14.) The terms of service further provide that English law applies to claims arising out of the agreement. (*Id.* at 13.) Plaintiffs do

not disagree that English courts have jurisdiction to hear the case. Rather, Plaintiffs assert that the forum selection clause should not be enforced because it would either (1) contravene Illinois public policy; or (2) be considered an unenforceable "unfair" term under English law. (Dkt. 41 at 14–22.)

Although "the clear majority" of circuits—including the First, Second, Third, Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits—conclude that "enforceability of a forum selection clause is governed by federal law" as a matter of federal procedure, 14D Wright & Miller's Federal Practice and Procedure § 3803.1 (4th ed.), the Seventh Circuit has "taken a different approach." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014). For a forum selection clause to be presumed controlling in all but the most exceptional cases, it must be valid. *Atl. Marine*, 571 U.S. at 63. "Simplicity," the Seventh Circuit explained in *Abbott Lab'ys v. Takeda Pharm. Co.*, "argues for determining the validity and meaning of a forum selection clause . . . by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears." 476 F.3d 421, 423 (7th Cir. 2007). Put another way, if the contract has a choice of law clause, the law "designated in the choice of law clause [is] used to determine the validity of the forum selection clause." *Jackson*, 764 F.3d at 775. That assumes, of course, that the choice of law clause itself is valid and does not "work in tandem" with the forum selection clause to create an "unconscionable result." *Id.* at n.23.

In view of this rule, the Court must first determine if the parties' contractual choice of English law is valid. If it is, then the Court must, second, determine what

English law has to say about this forum selection clause. If both the choice of law and forum selection clause are valid, then, under *Atlantic Marine*, the parties' forum choice is given controlling weight unless this case can be classified as "most exceptional." 571 U.S. at 63.

### B.   The Choice of English Law is Valid Because it is Not Contrary to Fundamental Illinois Public Policy

Where, as here, a federal court sits in diversity, "it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (quoting *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Accordingly, Illinois law determines whether the contract's choice of English law is enforceable. Illinois respects the contract's choice-of-law clause "[so] long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy." *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000).[2] Although the parties do not frame their public policy arguments explicitly as a choice of law issue, the Court must resolve the validity of the selection of English law before proceeding. It is relevant, then, that Plaintiffs argue that enforcing the forum

---

[2] The law chosen by the parties also "cannot create a result that is contrary to the 'fundamental policy of a state which has a materially greater interest' in the subject matter of the litigation." *Hendricks v. Novae Corp. Underwriting, Ltd*, 868 F.3d 542, 545 (7th Cir. 2017) (quoting *Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*, 568 N.E.2d 9, 14 (1990)). This exception is not at issue here.

selection clause (a potential consequence of applying English law) would violate Illinois fundamental public policy.

Plaintiffs argue that, under the Illinois Consumer Fraud Act ("ICFA"), Illinois consumers have a right to "access to Illinois courts—and Illinois juries—to prosecute their ICFA claims arising out of Illinois conduct." (Dkt. 41 at 14) (citing 815 ICLS § 505/10a).) In addition, Plaintiffs argue that there is a fundamental Illinois right to class action procedures that make small dollar value claims viable, and litigating in England would deprive Plaintiffs of an acceptable class action mechanism. (Dkt. 41 at 19–20.) These policy arguments are addressed in turn.

        1.   <u>ICFA</u>

ICFA, an Illinois statute, provides that an action by an Illinois plaintiff "may be commenced in the county in which the person against whom it is brought resides, has his principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred." 815 ICLS § 505/10a(b) (emphasis added). From this statutory language permitting an ICFA cause of action in multiple locations, including where defendant resides, Plaintiffs draw the broad rule that Plaintiffs have an unwaivable right to Illinois juries.

Plaintiffs cite no Illinois or Seventh Circuit case to have interpreted ICFA in this manner. Perhaps that is because the cited language does not purport to create a jury trial right. Rather, Illinois courts have, at least on one occasion, dismissed ICFA claims on *forum non conveniens* grounds in favor of English courts. *See Philips Elecs. N.V. v. N.H. Ins. Co.*, 728 N.E.2d 656, 668 (2000) ("There is no question here that

English courts are capable of adjudicating [plaintiff's] allegations of the [defendant's] fraud and misrepresentation.")[3]

Plaintiffs also allege that litigating in English courts would deprive them of a right to prosecute ICFA claims before an Illinois jury. (Dkt. 41 at 14.) But the Illinois Constitution "does not confer the right to a jury trial for a claim under the Consumer Fraud Act." *Martin v. Heinold Commodities*, 643 N.E.2d 734, 755 (Ill. 1994). ICFA thus provides no bar to litigating in English court.

### 2. Group Litigation in English Courts

Plaintiffs also contend that, because English courts lack a precise analogue for opt-out class actions,[4] requiring Plaintiffs' case to be litigated in an English court would violate Illinois consumers' procedural rights. (Dkt. 41 at 18–19.) But this attempt to identify a fundamental Illinois public policy in favor of domestic class actions fails because Illinois courts have not clearly identified such a policy.

Start with Plaintiffs' exaggerated reliance on *Kinkel v. Cingular Wireless LLC*. 857 N.E.2d 250, 278 (Ill. 2006). That case held that a waiver on class actions was unconscionable because it was contained in a contract of adhesion that failed to inform the customer of the cost to arbitrate and did not provide a cost-effective

---

[3] Plaintiffs also argue that at English court might not apply ICFA at all. (Dkt. 41 at 16.) But as *Philips* emphasizes, the question is not whether English courts will "adjudicate the [Illinois] Consumer Fraud Act," but is rather whether English courts can provide "an adequate remedy." *Philips*, 728 N.E.2d at 668. Although Illinois "has a 'local interest' in adjudicating issues related to" ICFA, English courts are more than capable of adjudicating fraud causes of action. *Id.* at 669.

[4] Federal class actions in the United States, of course, follow an "opt-out model: absent an affirmative request to opt out, a class member is in the class." Scott Dodson, *An Opt-in Option for Class Actions*, 115 Mich. L. Rev. 171 (2016).

mechanism for individual remedies in either a judicial or arbitral forum. 857 N.E.2d 250, 278 (2006). From this, Plaintiffs suggest that there is a strong Illinois public policy against "class action waivers that would effectively bar individuals from vindicating their rights when they have suffered small-dollar-value abuses." (Dkt. 41 at 19.) Plaintiffs read too much into *Kinkel*, however, which concerned a class action *waiver*, not whether a foreign country's *different* claim aggregation procedure impeded on a fundamental Illinois public policy right.

*Kinkel* was case-specific, not fundamental. It endorsed a "case-by-case" approach considering the "totality of the circumstances" for determining whether class action waivers are unconscionable, and it even went so far as to recognize that class action waivers in some situations might benefit consumers. *Kinkel*, 857 N.E.2d at 278. That is hardly a strong statement of public policy as to class action waivers, let alone as to a forum selection clauses requiring litigation in a foreign jurisdiction.[5]

Even if the Court were to apply the *Kinkel* case-by-case approach for class action waivers to this situation, the forum selection clause would not be unconscionable. *Kinkel* was concerned with the "cost-price disparity" that arose when a plaintiff attempting to vindicate a $150 claim would have had to pay $125 plus attorney fees per claim, precluding the viability of individual claims absent a class action mechanism. *See Kinkel*, 857 N.E.2d at 268. But here, were Plaintiffs to prevail, Defendants would have to pay for Plaintiffs' costs under the English loser-pays rule,

---

[5] Plaintiffs also rely on *Keefe v. All. Home Mortg. Corp.*, but that case merely applies *Kinkel* in the (appropriate) context of a class action waiver. 393 Ill. App. 3d 226, 234 (Ill. App. Ct. 2009).

which would mitigate the cost-price disparity for successful individual claims. (Dkt. 54-2 at 42:8–18.)[6]

In any event, litigating in the United Kingdom does not require the filing of individual, disconnected lawsuits: English courts also have tested mechanisms for group litigation, which have been available in English courts for over a century. Charlotte Hill, *All for one…*, 174 NLJ 8081, p17 (2024). Although distinct from U.S. class actions, group litigation "plays a pivotal role in the English legal landscape" and has "gained prominence across Europe and in the UK in recent years." *Id.*; *see also* Mark Stiggelbout, *The Recognition in England and Wales of United States Judgments in Class Actions*, 52 Harv. Int'l L.J. 433, 444 (2011) ("Although the group litigation phenomenon is far less popular than it is in the United States, it comes as little surprise, given the rationales for class actions, that there exist English devices for the aggregation of small or complex claims."); (Dkt. 22-2 ¶¶ 46–58 (explaining English group litigation procedures); Dkt. 54-2 at 26:8–16 (Plaintiffs' English law expert confirms that English procedures for collective actions "are robust and capable of dealing with quite a number of group litigation cases.").) It is true that group litigation mechanisms in the United Kingdom are, for the most part, "opt-in proceedings," in which parties must file their own claim.[7] But that has not deterred courts from finding that foreign courts—including English courts—are adequate

---

[6] By the same token, Plaintiffs would liable for any unsuccessful claims. (*See id.*)

[7] § 13:12. England and Wales—Class actions and other types of group claims, 3 N.Y.Prac., Com. Litig. in New York State Courts § 13:12 (5th ed.)

alternative fora.[8]

Plaintiffs highlight a recent decision from the Central District of California concerning the OnlyFans forum selection clause. (*See* Dkt. 88.) In that case, a district judge found that the differences between English group litigation procedures and those of U.S.-style class actions would deprive California plaintiffs of their state law rights because California law strongly favors consumer class actions; the judge also held that enforcing the forum selection clause would undermine those rights as well as a California right to civil juries. *See N.Z. v. Fenix Int'l Ltd.*, No. 8:24-CV-01655-FWS-SSC, 2025 WL 1122493, at *6–8 (C.D. Cal. Apr. 9, 2025). *N.Z.* was predicated, however, on California's clear statement of public policy in favor of U.S.-style class actions. *Id.* Moreover, the court *enforced* the forum selection clause against Tennessee, Georgia, and Wisconsin plaintiffs, who failed to provide authority suggesting that those states had strong public policy statements akin to those of California. *See id.* at *7.

So too here. Plaintiffs' tenuous references to Illinois public policy statements stand in contrast to the strong California public policy statements highlighted in the

---

[8] *See, e.g.*, *In re Lloyd's Am. Tr. Fund Litig.*, 954 F. Supp. 656, 673 (S.D.N.Y. 1997) ("Although English law lacks the exact procedural equivalent of the American class action suit, it provides other procedural mechanisms to handle cases involving multiple plaintiffs— including representative actions, 'test' cases, and the consolidation of multiple actions. Thus, the English courts are an adequate alternative to a U.S. forum."); *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1333 (S.D. Fla. 2010) ("Ireland recognizes representative actions, which are essentially opt-in class actions, and a 'test case' mechanism where common issues of law and fact are resolved in a lead case and then imported into other cases. Although the parties disagree on how well these mechanisms are suited for this particular case, it is clear that, under applicable case law, they constitute an adequate substitute for the opt-out class action provided by the Federal Rules of Civil Procedure.")

*N.Z.* case. For this reason, as well as the other considerations examined above, no exception to the general rule in favor of a contractually-bargained for choice of law clause applies. Accordingly, the English law provision of the OnlyFans contract is valid.

**C.    The Forum Selection Clause Is Valid Under English Law**

Because the rule in this Circuit is that the validity of a forum selection clause is determined by the law of the contract, the Court must determine whether the forum selection clause in the OnlyFans terms of service is enforceable under English law. Aided by their learned English law experts, the parties have vigorously contested this point. Citing *Donohue v. Armco Inc.* [2001] UKHL 64 [24], Defendants' expert contends that the general rule under English common law is that forum selection clauses are to be enforced in the absence of strong reasons to the contrary,[9] and factors of convenience foreseeable at the time of contracting are not strong reasons. (Dkt. 22-2 ¶¶ 17–19; Dkt. 54 at 15 (citing *Antec Intl. Ltd. v Biosafety USA Ltd.* [2006] EWHC (Comm) 47 [7]).) As stated at the Rule 44.1 hearing, Defendants' position is that this common law rule applies unless displaced by statutory law. (*E.g.*, Dkt. 102 at 39:4–16.)

Plaintiffs' expert does not disagree that, in the absence of statutory authority, the common law test applies, although Plaintiff characterizes the test as "good

___

[9] *Id.* ("If contracting parties agree to give a particular court exclusive jurisdiction to rule on claims between those parties, and a claim falling within the scope of the agreement is made in proceedings in a forum other than that which the parties have agreed, the English court will ordinarily exercise its discretion . . . to secure compliance with the contractual bargain, unless the party suing in the non-contractual forum (the burden being on him) can show strong reasons for suing in that forum.")

reasons" rather than "strong reasons." (Dkt. 41-1 ¶¶ 52–53). Plaintiffs' expert contends nonetheless that there is a statutory basis to depart from the common law because the forum selection clause is an "unfair term" under Section 62 of the U.K. Consumer Rights Act of 2015 ("CRA"), as evidenced by Section 15B of the Civil Judgments and Jurisdiction Act 1982 ("CJJA")—a separate statute that creates a domestic right to sue on the part of U.K. domiciliaries. (*See id.* ¶¶ 24–46; Dkt. 41 at 21.) As explained below, the Court, with due respect to Plaintiffs' able expert, is not persuaded that these statutes displace the common law; but, even if they do, the forum selection clause would not be considered an unfair term.

### 1. Common Law

Under either formulation of the common law test, the forum selection clause is valid. At common law, "where the parties have conferred jurisdiction on the English court under an exclusive jurisdiction agreement, the court will ordinarily give effect to that agreement." UK White Book, CPR 11.1.14, Fenix-0715.  The general rule is that the parties "will be held to their contractual choice of English jurisdiction unless there are overwhelming, or at least very strong, reasons for departing from this rule,") and such strong reasons do not include "factors of convenience that were foreseeable at the time that the contract was entered into. . . ." *Antec*, [2006] EWHC (Comm) 47 [7].

Should the common law apply, Plaintiffs justification for displacing the parties' agreement (Dkt. 41-1 ¶¶ 52–53) is unpersuasive, namely because the convenience and expense of litigating in English courts was foreseeable at the time the contract

was entered into, English courts have procedures to handle group litigation, and they are more than capable of adjudicating fraud and breach of contract claims. Stated differently, the established common law rule in England suggests that there is no basis to ignore the parties' agreement as to the choice of forum.

### 2. The CJJA and CRA Do Not Displace the Common Law

Perhaps recognizing that the common law is not a strong basis on which to invalidate the forum selection clause, Plaintiffs train their focus on Section 62 of the U.K. Consumer Rights Act of 2015 ("CRA") and Section 15B of the Civil Judgments and Jurisdiction Act 1982 ("CJJA"). (Dkt. 41-1 ¶¶ 24–47; Dkt. 41 at 20–21.) Neither of these statutes, however, displaces the common law in this context.

Section 15B of the CJJA explicitly applies only to UK-domiciled consumers[10] and states that U.K. consumers may "bring proceedings against the other party to the consumer contract . . . in the courts for the place where the consumer is domiciled. . . ." CJJA § 15B(2)(b). As this language makes plain, the CJJA modifies the common law jurisdictional rule for U.K. domiciliaries[11] but does not directly speak to United States or other foreign domiciles. Recognizing this limitation, Plaintiffs pivot to arguing that the CJJA establishes a general principle in favor of a consumer being able to litigate where they are domiciled, and that, by extension, the forum

---

[10] Civil Jurisdiction and Judgments Act 1982, c. 27, § 15B(1) ("This section applies in relation to proceedings whose subject-matter is a matter relating to a consumer contract *where the consumer is domiciled in the United Kingdom*.") (emphasis added).

[11] Defendants' expert concedes as much. (*See.* Dkt. 22-2 at 6 n.1.)

selection clause is an unfair term under *another* statutory regime: the CRA. (Dkt. 41-1 ¶¶ 41–51; Dkt. 41 at 21.)

The CRA applies to contracts between traders and consumers and states that "[a]n unfair term of a consumer contract is not binding on the consumer." Consumer Rights Act 2015, c. 15, §§ 61, 62(1). A term is unfair if, "contrary to the requirement of good faith, it causes a significant imbalance in the parties' rights and obligations under the contract to the detriment of the consumer." *Id.* § 62(4). Whether a term is fair is to be determined by:

> (a) taking into account the nature of the subject matter of the contract, and
>
> (b) by reference to all the circumstances existing when the term was agreed and to all of the other terms of the contract or of any other contract on which it depends.

*Id.* § 62(5). The CRA's unfairness test is supplemented by a nonexhaustive list (known as the "grey list") of terms that may be regarded as unfair. *Id.* § 63(1); *id.* sch. 2, Part 1; (Dkt. 41-1 ¶ 42.) Item 20 of the grey list states that the following might be regarded as unfair:

> A term which has the object or effect of excluding or hindering the consumer's right to take legal action or exercise any other legal remedy, in particular by—
>
> > (a) requiring the consumer to take disputes exclusively to arbitration not covered by legal provisions,
> >
> > (b) unduly restricting the evidence available to the consumer, or
> >
> > (c) imposing on the consumer a burden of proof which, according to the applicable law, should lie with another party to the contract.

CRA § 20, sch. 2, Part 1.

It is unlikely that an English court would apply the CRA to bar United States

17

plaintiffs from agreeing to a forum selection clause requiring suit in an English court. At face value, the CRA does not appear to have much to say at all about jurisdictional issues or the propriety of forum selection clauses. Plaintiffs instead ask the Court to effectively incorporate the CJJA's creation of a right *for U.K. domiciliaries* to sue at home into a broader principle of U.K. law via the CRA's general prohibition of unfair terms in consumer contracts.

Plaintiffs' argument is creative, but, taken to its logical end, the construct goes too far. Plaintiffs effectively assert that, under English law, *no* English corporation can require foreign defendants to agree to a forum selection clause requiring litigation in English courts. English corporations seeking to protect their interests by requiring suit in their home courts would be out of luck. That is a notable proposition, made more so by the fact that this would be apparently the first case to adopt that approach. European law differs from American law, of course, and such differences can be readily seen the greater favor often shown to consumers in Europe (the CRA is evidence of this favor). But to win the point that it is unfair under the CRA for United States consumers to agree to an English forum, Plaintiffs would need either to show clearer statutory language or cite to an authoritative case applying the CRA in that way. Having done neither, Plaintiffs fail to show that the CRA creates such a broad right for United States consumers.

### 3. The Forum Selection Clause Is Not Unfair Under the CRA

Even were the CRA to apply in this case, Plaintiffs have not demonstrated that the forum selection clause is unfair under either the grey list or the CRA's general

unfairness test. Starting with the grey list, the individual OnlyFans consumer's "right to take legal action" is not excluded or hindered by litigating in the Courts of England and Wales. CRA § 20, sch. 2, Part 1. English courts are more than "capable of adjudicating . . . allegations of . . . fraud and misrepresentation," *Philips*, 728 N.E.2d at 668, particularly given the availability of remote appearances in English courts,[12] their experience with foreign litigants, and the expeditious resolution of claims by the English legal system. (Dkt. 22-2 ¶¶ 48–49.) Plaintiffs point to no case in which this provision of the grey list was used to negate a forum selection clause. Plaintiffs instead cite two cases that long predate the CRA for the general proposition that European and English law provides for a right to sue in the consumer's domicile, *Océano Grupo v. Salvat Editores SA*, 2000 E.C.R. I-4963, issued by the Court of Justice of the European Union in 2000, and *Standard Bank London Ltd. v. Apostolakis & Anor (No. 2)*, [2002] CLC 939, issued by an English court in 2001. Neither case speaks directly to the CRA or to United States plaintiffs.

*Océano Grupo* concerned the sale of encyclopedias by plaintiffs, the sellers, to defendants, the consumers. 2000 E.C.R. I-4943, ¶ 15. The contracts contained a clause conferring jurisdiction on Barcelona courts, where the plaintiffs had their principal place of business but where the consumers were not domiciled. *Id.* ¶ 16. When the consumers did not pay, the sellers sued in a Barcelona court. *Id.* ¶ 17. Applying Council Directive 93/13/EEC of April 5, 1993 on unfair terms in consumer contracts (a European directive, not the CRA), the European court found that the

---

[12] UK White Book, CPR 32.3, Fenix-0736.

exclusive jurisdiction clause was an unfair term because requiring the consumer to submit to the exclusive jurisdiction of a court a long way from his domicile "may make it difficult for him to enter an appearance," and the associated costs in entering an appearance "could be a deterrent and cause him to forgo any legal remedy or defence." *Id.* ¶¶ 18–22. Because that cost resulted in an imbalance of the parties' rights and obligations under the contract, to the detriment of the consumer, the court found it to be an unfair term. *Id.* ¶¶ 22–24.

*Océano Grupo*'s commentary on consumer exclusive jurisdiction clauses lends, of course, some superficial support to Plaintiffs' argument. But the reasoning behind the case is based on the cost to the consumer of litigating in foreign country. *Océano Grupo* was decided two and a half decades ago, in a world far less connected than today, without the advent of routine video appearances in English courts.[13] The *Apostolakis* case cites *Océano Grupo* to find that a clause requiring Greek consumers to bring suit in English court is not binding, but *Apostalokis* was not only concerned with cost and convenience, but also with translation issues between Greek and English. [2002] CLC 939, 949–51. Those concerns are not present here.

In short, Plaintiffs offer two cases suggesting that some European courts, decades ago, found exclusive jurisdiction provisions to be unfair. But those cases are not particularly recent, do not grapple with remote procedures available today in English courts, do not apply the 2015 CRA, and arguably are limited to European

---

[13] Defendants' expert presented testimony on the availability of remote proceedings at the Rule 44.1 hearing. (Dkt. 102 at 61:9–18.)

efforts to create a common economic community.[14] It is far from clear that either case speaks to the CRA or to its impact on United States consumers.

Turning back to the statute, the general unfairness prong of the CRA is also relevant, and is perhaps the most important factor, in determining whether the forum selection clause is an unfair term. The CRA's statutory definition of unfairness requires consideration of "the nature of the subject matter of the contract" and the circumstances of the contract. CRA § 62(5). Each of those factors—the contract's subject matter, its circumstances, and Plaintiffs' allegations—all bear emphasis: Plaintiffs contracted with an online video platform well-known for providing adult content and now complain that their online interactions with "Creators" were fraudulent because those interactions involved DMs from third parties. (*See generally* Dkt. 1.) Defendants' enterprise is a virtual operation aimed at connecting Plaintiffs—from wherever they are—to faraway Creators. Plaintiffs certainly believe distance is no barrier to a genuine connection, which they themselves argue can be created over the internet through social media. To ask Plaintiffs to connect remotely to an English court is, in that context, reasonable. And with due respect to Plaintiffs' social preferences, Defendants' business model, and Creators' industry, requiring a plaintiff who has contracted with an online platform for what is essentially entertainment to litigate in an agreed overseas forum does not reek of unfairness. This is especially so given the discretionary nature of the parties' contract and the services provided by

---

[14] Defendants' expert testified at the Rule 44.1 hearing that the CRA was intended to facilitate the operation of the internal European market, not to confer rights on consumers outside of the European Union. (Dkt. 102 at 51:2–53:21.)

OnlyFans. All told, the subject matter and circumstances of this contract, including its formation, suggest that the forum selection clause is not unfair.

### D.    The Forum Selection Clause Controls

Because the parties' forum selection clause is valid under the law of the contract, it is "given controlling weight in all but the most exceptional cases," and the Court may only consider arguments about the public-interest factors. *Atl. Marine*, 571 U.S. at 63 (internal quotation omitted).  Because the public-interest factors will rarely outweigh the forum choice, "the practical result is that forum-selection clauses should control except in unusual cases," *id.* at 64, as forum-selection clauses play "a very significant role in furthering vital interests of the justice system . . . [by] establishing predictability and certainty in legal transactions." *In re Ryze Claims Sols.*, LLC, 968 F.3d 701, 711 (7th Cir. 2020) (cleaned up). This is not an exceptional case. Not only is the public interest is served by providing parties with predictability about where they would engage in future litigation, but, as discussed above, enforcing the parties' agreement would not violate any strong public policy of Illinois and would afford Plaintiffs with a well-established legal system that has developed and respected (even if different) mechanisms for group litigation. In other words, this is not the kind of rare or unusual case in which the parties' forum selection should be cast aside.

## IV.    CONCLUSION

Defendants' motion to dismiss under the doctrine of *forum non conveniens* (Dkt. 21) is granted.

SO ORDERED in No. 23-cv-06151.

Date: September 29, 2025

_____

JOHN F. KNESS
United States District Judge